IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BAIRON ALEXANDER GALLEGO-VILLADA,[1] <br>    Petitioner <br> <br> v. <br> <br> WARDEN OF CLINTON COUNTY CORRECTIONAL FACILITY, et al., <br>    Respondents | No. 1:20-cv-01737 <br> <br> (Judge Kane) |

## MEMORANDUM

On September 24, 2020, pro se Petitioner Bairon Alexander Gallego-Villada ("Petitioner"), who is currently confined at the Clinton County Correctional Facility ("CCCF") in McElhattan, Pennsylvania, initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the constitutionality of his detention by the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). (Doc. No. 1.) Following an Order to show cause (Doc. No. 3), Respondents filed a response, contending that Petitioner's detention is lawful (Doc. No. 5). Petitioner has filed neither a traverse nor an extension of time to do so. Accordingly, because the time period for filing a traverse has expired, Petitioner's § 2241 petition is ripe for disposition.

I.   **BACKGROUND**

Petitioner is a citizen and native of Venezuela who entered the United States at an unknown time and place without being admitted or paroled by an immigration officer. (Doc. No.

---

[1] When this matter was opened, Petitioner's name was entered as "Gallego-Villada Bairon Alexander" because, on the first page of his § 2241 petition, he indicated that such was his name. (Doc. No. 1.) Respondent's response and attachments, however, indicate that Petitioner's true name is Bairon Alexander Gallego-Villada. The Court, therefore, will direct the Clerk of Court to update the docket accordingly.

5-1 at 3.)  He resided in the United States pursuant to a Non-Immigration B1/B2 visa that was valid from July 23, 2001 through July 22, 2011.  (Id. at 5.)  In July of 2019, Petitioner was convicted of possession with intent to distribute heroin and fentanyl in the United States District Court for the District of New Jersey.  (Id. at 4.)  He was sentenced to serve forty (40) months' imprisonment.  (Id.)

ICE officials encountered Petitioner on February 11, 2020 during routine operations at the Moshannon Valley Correctional Center ("MVCC"), where Petitioner was serving his federal sentence.  (Id.)  On February 25, 2020, ICE served Petitioner with a Form I-851, Notice of Intent to Issue a Final Administrative Removal Order, charging him as removable pursuant to § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") because Petitioner was an alien who had entered the United States without being admitted or paroled who had been convicted of an aggravated felony for an offense relating to illicit trafficking of controlled substances.  (Id. at 4, 7, 10-12.)  On March 4, 2020, Petitioner was served with Form I-851-A, the Final Administrative Removal Order.  (Id. at 8, 13.)  Petitioner was taken into ICE custody on March 20, 2020 after he was released from the MVCC.  (Id. at 8.)  He has been in ICE custody ever since.

Since the issuance of the Final Administrative Removal Order, ICE's Enforcement and Removal Operations ("ERO") has taken steps to effectuate Petitioner's removal from the United States to Venezuela.  (Id.)  On March 6, 2020, ERO sent a travel document request package to Venezuelan authorities.  (Id.)  Moreover, ERO contacted ICE's Removal and International Operations ("RIO") to assist in arranging Petitioner's removal.  (Id.)  ERO has obtained a copy of Petitioner's passport, and on or about June 23, 2020, Venezuelan authorities issued a travel document.  (Id.)  On June 18, 2020, ERO reviewed Petitioner's custody status and determined

that he should remain detained because (1) his criminal history supports a conclusion that he poses a danger to society and/or a flight risk and (2) it is expected that Petitioner will be removed in the reasonably foreseeable future.  (Id.)  While ERO has obtained Petitioner's passport and travel document, scheduling his removal has been hindered by the COVID-19 pandemic.  (Id.)  Once international flights to Venezuela resume, ERO expects to make travel arrangements for Petitioner and schedule his removal quickly.  (Id.)

Petitioner filed the instant § 2241 petition on September 24, 2020.  (Doc. No. 1.)  In his § 2241 petition, Petitioner asks the Court to order Respondents to immediately remove him to Venezuela or release him to live with family in the United States until he can be removed to Venezuela.  (Id. at 2.)  Petitioner also asserts that ICE could acquire a travel document for the Dominican Republic, where his wife and children live.  (Id.)  Petitioner argues that ICE is now in violation of his rights because he has been detained for over six (6) months.  (Id.)  He indicates that on September 4, 2020, he filed a motion for a custody redetermination hearing pursuant to Guerrero-Sanchez v. Warden York County Prison, 905 F.3d 208 (3d Cir. 2018), with the immigration court in York, Pennsylvania, but "has yet to receive any correspondence or hearing from that motion."  (Id.)

## II.     LEGAL STANDARD

Under 28 U.S.C. § 2241(c), a prisoner or detainee may receive habeas relief only if he "is in custody in violation of the Constitution or laws or treaties of the United States."  See 28 U.S.C. § 2241(c)(3); see also Maleng v. Cook, 490 U.S. 488, 490 (1989).  Because Petitioner is currently detained within the jurisdiction of this Court and asserts that his continued detention violates due process, this Court has jurisdiction over his § 2241 petition.  See Zadvydas v. Davis, 533 U.S. 678, 699 (2001); Spencer v. Kemna, 523 U.S. 1, 7 (1998).

### III. DISCUSSION

An alien detained pursuant to a final order of removal is subject to the provisions outlined in 8 U.S.C. § 1231.  Under that section, "the Attorney General shall remove [an] alien from the United States within a period of 90 days."  See 8 U.S.C. § 1231(a)(1)(A).  The removal period begins on the latest of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

Id., § 1231(a)(1)(B).  "As the name suggests, a Final Administrative Removal Order is administratively final when issued because there is no [Board of Immigration Appeals] review of such an order—instead, an alien subject to such an order may seek immediate judicial review of the order under § 1252."  See Carcamo v. Doll, No. 1:18-cv-1682, 2019 WL 1468202, at *2 (M.D. Pa. Apr. 3, 2019) (quoting Mancera v. Kreitzman, No. 16-cv-89, 2016 WL 1249600, at *3 (E.D. Wisc. Mar. 29, 2016); see also Ramos-Lara v. Decker, No. 3:11-cv-782, 2011 WL 2981184, at *4-5 (M.D. Pa. June 7, 2011), report and recommendation adopted, 2011 WL 2981319 (M.D. Pa. July 21, 2011); Keita v. Sabol, No. 1:11-cv-248, 2011 WL 1375052, at *1 (M.D. Pa. Apr. 12, 2011).  In the instant case, ICE issued a Final Administrative Removal Order with respect to Petitioner.  Petitioner, therefore, is subject to a final order of removal and is detained pursuant to § 1231.

During the ninety (90)-day period set forth in § 1231(a)(1)(A), "the Attorney General shall detain the alien.  Under no circumstance during the removal period shall the Attorney General release an alien who has been found . . . deportable under section 1227(a)(2)."  See id.

4

§ 1231(a)(2). After the ninety (90)-day period expires, the alien's detention may continue, or he may be released on supervision. See id. § 1231(a)(3), (6). The Supreme Court has concluded, however, that § 1231 "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. It does not permit indefinite detention." See Zadvydas, 533 U.S. at 698. Thus, "[o]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." See id. at 699. To establish a uniform baseline, the Supreme Court concluded that a period of six (6) months is a "presumptively reasonable period of detention." See id. at 701. Moreover, the United States Court of Appeals for the Third Circuit has concluded that "an alien detained under § 1231(a)(6) is generally entitled to a bond hearing after six months (i.e., 180 days) of custody." See Guerrero-Sanchez, 905 F.3d at 226. Following such a hearing, the alien "is entitled to be released from detention unless the government establishes that the alien poses a risk of flight or a danger to the community." See id. at 224 (quoting Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011)). "The Government must meet its burden in such bond hearings by clear and convincing evidence." Id. at 224 n.12.

Petitioner has been detained pursuant to § 1231(a) since March 4, 2020, the date on which the Final Administrative Removal Order was issued. As of the date of this Memorandum, therefore, Petitioner has been detained for over seven (7) months, which is beyond the presumptively reasonable six (6)-month period set forth in Zadvydas and Guerrero-Sanchez. In his § 2241 petition, Petitioner asserts that on September 4, 2020, he filed a motion with the immigration court in York, Pennsylvania, seeking a custody redetermination hearing pursuant to Guerrero-Sanchez, and has yet to receive any correspondence regarding that motion. (Doc. No. 1 at 1.) Respondents maintain that "[t]he only bar to [Petitioner's] removal is scheduling his

flight—which has been done. ICE has made it clear that there will be no impediment towards executing [Petitioner's] removal expeditiously should travel restrictions cooperate." (Doc. No. 5 at 13.) Respondents further indicate that "[i]n the event that [Petitioner's] removal is no longer 'imminent' and he is still detained, he will receive a bond hearing." (Id. at 14.)

As noted supra, an alien detained pursuant to § 1231(a) is "generally entitled to a bond hearing after six months (i.e., 180 days) of custody." See Guerrero-Sanchez, 905 F.3d at 226. After such hearing, the alien is entitled to release unless the Government establishes that the alien poses a flight risk or a danger to the community. See id. at 224. However, "[i]f the 180-day threshold has been crossed, but the alien's release or removal is imminent . . . [then] the government [is not] required to afford the alien a [bond] hearing before an immigration judge." See id. at 226 n.15. In the instant case, Respondents represent that while security concerns preclude them "from placing exact information in the record, the most recent information obtained from ICE legal counsel is that [Petitioner's] removal has been scheduled and is expected to occur within the next 45 days [i.e., 45 days from October 15, 2020, the date on which Respondents filed their response]." (Doc. No. 5 at 4 n.2.) Thus, because Petitioner's removal is imminent, the Government is not required, at this time, to afford Petitioner a bond hearing pursuant to Guerrero-Sanchez. Thus, the Court will deny Petitioner relief with respect to his Guerrero-Sanchez claim.

Moreover, the Court agrees with Respondents that Petitioner has not met his burden of demonstrating that he is entitled to relief pursuant to Zadvydas. (Doc. No. 5 at 10-13.) 6 at 5-7.) As noted supra, the Supreme Court has concluded that a period of six (6) months is a "presumptively reasonable period of detention." See Zadvydas, 533 U.S. at 701. After that six (6)-month period, "once the alien provides good reason to believe that there is no significant

6

likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." See id.  In the instant case, Petitioner has not provided good reason for the Court to believe his removal is not likely to occur in the reasonably foreseeable future.  See Nicole S. A. B., 2019 WL 6606864, at *3 (denying relief to a detainee under Zadvydas because she "merely allege[d], in conclusory fashion, that her detention has been unreasonably prolonged"); Manuel H., 2019 WL 2710676, at *3 (denying relief to a detainee under Zadvydas because he "provide[d] no evidence in support of his assertion that there is no significant likelihood of his removal in the reasonably foreseeable future"); DonMartin v. Lowe, No. 1:17-cv-1766, 2017 WL 5990114, at *2 (M.D. Pa. Dec. 4, 2017) (denying relief to a detainee who had been detained for eight (8) moths because his argument that "his removal [was] unlikely because it ha[d] not yet occurred" was insufficient to meet the standard under Zadvydas).  On the contrary, Respondents have presented evidence that ERO/ICE have a copy of Petitioner's passport and that a travel document has been issued.  (Doc. No. 5-1 at 8.)  Moreover, Respondents represent that Petitioner's removal has been scheduled and is imminent.  (Doc. No. 5 at 4 n.2.)  Thus, the Court will deny Petitioner relief with respect to his Zadvydas claim.

## IV.     CONCLUSION

For the foregoing reasons, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Doc. No. 1.)  This denial, however, will be without prejudice to Petitioner's right to file a new § 2241 petition in the event his scheduled removal is no longer imminent and should he not be provided a Guerrero-Sanchez hearing to review his custody status at that time.  An appropriate Order follows.